IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Yusef A. Rabb,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:13cv999 (TSE/TRJ) |
| ) | |
| **Eric D. Wilson,** ) | |
| Respondent. ) | |

MEMORANDUM OPINION

Yusef A. Rabb, a federal inmate housed in the Eastern District of Virginia and proceeding pro se,[1] has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' refusal to consider his petition seeking *nunc pro tunc* designation of the federal facility in which he served sentences for D.C. Code offenses. On March 3, 2014, respondent filed a Motion to Dismiss for Failure to State a Claim, or in the alternative, for Summary Judgment, accompanied by a supporting memorandum.[2] Petitioner was

---

[1] Petitioner's memorandum in support of his August 1, 2013 petition was signed by himself and two attorneys, Ronald Sullivan and Intisar Rabb, who appear to be members of the D.C. and New York bar. See Dkt. 3. Petitioner's response to the respondent's Motion to Dismiss, filed on April 18, 2014, was not signed by these attorneys. Neither attorney appears to be a member of the Virginia Bar. Pursuant to new Local Rule 83.1, effective January 9, 2015, any attorney who assists a pro se litigant in preparing a document for filing in this Court "shall be considered to have entered an appearance in the proceeding in which such document is filed and shall be subject to all rules that govern attorneys who have formally appeared in the proceeding." E.D. Va. R. Civ. P. 83.1(M)(1). Accordingly, had this petition been filed more recently, these attorneys would be required either to be admitted to the Virginia bar or to seek to appear *pro hac vice*, pursuant to Local Rule 83.1(D), to enter an appearance in this case. As this case commenced nearly two years before the enactment of Local Rule 83.1(M)(1), however, it would inappropriate to apply this rule to these attorneys. Thus, the memorandum in support of the petition is considered validly filed and is considered to be part of the record in this case.

[2] Because respondent's Motion contained supporting exhibits, this Motion will be construed as one for Summary Judgment, pursuant to Federal Rule of Civil Procedure 12(d). There are no

given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he filed a response. Respondent filed a reply to petitioner's response. For the reasons that follow, respondent's Motion must be granted, and the petition must be dismissed.

## I. Background

The petitioner has a lengthy criminal history, and the following material facts are undisputed. On May 9, 1991, petitioner was arrested by authorities in Washington, D.C. for Murder I While Armed, Carrying a Pistol without a License, and Possession of a Firearm During Crime of Violence. See Memorandum of Law in Support of Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Resp.'s Mem.") [Dkt. 8], Ex. A (Erickson Decl.) ¶ 5. On July 11, 1991, petitioner was convicted and sentenced in the District of Columbia Superior Court to a 7-year sentence on a prior charge of Possession with Intent to Distribute Cocaine. Id. ¶ 6; Att. 1. On October 27, 1992, petitioner was convicted and sentenced in the same court to a 25 year-to-life term on his May 9, 1991 charges. This sentence was ordered to run consecutively to his sentence imposed for Possession with Intent to Distribute Cocaine. Id. ¶ 7; Att. 2. On February 23, 1993, petitioner was paroled from his original 7-year sentence and began serving his 25-to-life sentence. Resp.'s Mem., Ex. A ¶ 8. On December 15, 1994, petitioner pled guilty and was sentenced in the District of Columbia Superior Court to a term of 16 months-to-4 years for Attempted Possession with the Intent to Distribute Cocaine. This sentence was to run concurrently with any other previously-imposed sentence. Id. ¶ 9; Att. 4.

On December 24, 1994, while confined at the Lorton Correctional Complex, petitioner attacked and repeatedly stabbed another inmate. See Resp.'s Mem., Ex. B, at 1. Petitioner was

---

material disputes of fact, and petitioner has not submitted an affidavit that he has not been able to present all material facts, pursuant to Rule 56(d). See Fed. R. Civ. P. 56(d).

charged with Assault with Intent to Murder, and on July 28, 1995 – while still in custody on his D.C. sentences – he pled guilty, and was sentenced by this Court to a 105-month sentence. Id. Ex. A ¶ 10; Att. 5 (Judgment in a Criminal Case). The sentencing judge explicitly stated that the 105-month should "run consecutive to any other sentence presently being served." Resp.'s Mem., Ex. A, Att. 5; see also Ex. B, at 2-3. In 1999, the Lorton facility closed, and petitioner was transferred to Virginia state prison before being transferred to the custody of the Federal Bureau of Prisons ("BOP") in 2004. See Memorandum in Support of Petition for a Writ of Habeas Corpus ("Pet.'s Mem.") [Dkt. 3] ¶¶ 31 n.1, 32. Petitioner began serving his federal sentence on June 21, 2010, when he was paroled from his D.C. offenses. See Resp.'s Mem., Ex. A ¶ 11. Petitioner is currently housed at FCC Petersburg ("Petersburg"), and is scheduled to be released from custody on February 2, 2018. Pet.'s Mem. ¶ 1; Resp.'s Mem., Ex. A ¶ 13.

On January 31, 2012, petitioner submitted to Petersburg officials a petition to designate *nunc pro tunc* designate his federal confinement as the place of concurrently serving his federal sentence, along with an attempt at informal resolution of his request. See Pet.'s Mem. ¶ 14. After being told that informal resolution of his request was not possible, petitioner submitted all required formal administrative remedies. Id. ¶¶ 26. The BOP's Regional Director denied petitioner's request for *nunc pro tunc* designation based on the fact that the petitioner's federal sentence was ordered to run consecutively to his D.C. sentences, and thus determined that his sentence had been calculated correctly. See Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Pet.'s Opp.") [Dkt. 12], Ex. 1, at unnumbered page 10. The BOP's Central Office affirmed this decision, finding that "[petitioner's] sentence has been computed as directed by federal statute [and BOP policy]." Id. at unnumbered page 12.

3

Petitioner alleges that the BOP's refusal to consider his *nunc pro tunc* petition is erroneous, and violates 18 U.S.C. § 3621(b), "which confers on the BOP discretionary authority to determine the computation and place of service for federal sentences, including *nunc pro tunc* designations of concurrency." Pet.'s Mem. ¶ 39.[3] Petitioner seeks to have his federal facility designated as the place of serving his federal sentence concurrent to his D.C. sentences. According to petitioner, such designation would result in the calculation of his federal sentence starting on July 28, 1995, the date it was imposed, rather than on June 21, 2010, the date on which he was paroled from his D.C. sentence. Id. ¶ 34. In the alternative, he argues that the BOP could calculate his federal sentence as running from the date he entered federal custody, on July 1, 2004. He argues that, notwithstanding this Court's order that his sentences run consecutively, the BOP is required "to make its own determination as to concurrency," id. ¶ 47, based upon various statutory factors provided in 18 U.S.C. § 3621(b). Respondent states that the BOP does not have authority to consider petitioner's request, in light of this Court's order that petitioner's federal sentence run consecutive to his D.C. sentences. See, e.g., Resp.'s Mem., at 2.

Because it is undisputed that petitioner has exhausted his administrative remedies, this petition is ripe for review on the merits. For the reasons stated below, respondent's Motion for Summary Judgment must be granted.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[3] Petitioner also requests that his petition be construed as a motion to request that the Director of the BOP file a petition for a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A), and that this Court enter an order retroactively reducing his sentence. For the reasons discussed in Part III.C., petitioner's requests cannot be considered.

4

of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Analysis

### A. Relevant Legal Standards

This petition has been properly filed as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, which gives district courts jurisdiction over petitions by federal inmates who allege that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Specifically, challenges to the "execution of a federal sentence are properly brought under § 2241," including challenges to the BOP's calculation of an inmate's sentence. United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (internal citations omitted).

Petitioner's challenge involves the relationship between 18 U.S.C. § 3584(a), which governs a federal court's ability to impose multiple terms of imprisonment, and 18 U.S.C. § 3621(b), which gives BOP the ability to determine where an inmate will serve a criminal sentence. 18 U.S.C. § 3584(a), in relevant part, provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . . Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

Thus, unless a federal court explicitly states that multiple sentences imposed at different times will run concurrently, it is presumed that they run consecutively. The decision whether to impose a consecutive or concurrent sentence is one committed solely to the discretion of the Judiciary. See Setser v. United States, _ U.S. _, 132 S. Ct. 1463, 1468 (2012) (citing Oregon v. Ice, 555 U.S. 160, 168-69 (2009)). When making a sentencing decision, judges should consider the factors laid out in 18 U.S.C. § 3553(a), including the nature and seriousness of the offense, the defendant's history, and the specific purposes of the sentence imposed. 28 U.S.C. § 3584(c). As only the Judiciary has the power to sentence, only the Judiciary has the actual power to

determine whether sentences will run consecutively or concurrently, and the BOP may not overrule the Judiciary's decision once the sentence is imposed. See Setser, 132 S. Ct. at 1469 ("[O]nly district courts . . . have the authority to make the concurrent-vs.-consecutive decision . . . and the [BOP] is not free to use its 'place of imprisonment' authority to achieve a different result.").

Once an inmate is committed to federal custody, however, the BOP has discretion to determine his "place of confinement." When making this decision, "the [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise . . . ." 28 U.S.C. § 3621(b). The BOP should consider several factors when designating an offender's place of confinement, including the resources of the relevant institution, the inmate's own characteristics, the nature of his offense, any views of the sentencing court on the purposes of the imposed sentence, and any relevant policy statements prepared by the U.S. Sentencing Commission. Id. § 3621(b)(1)-(5).

Under § 3621(b), the BOP has authority to designate a state institution for concurrent service of a federal sentence. This situation ordinarily occurs when "primary custody resided with the non-federal jurisdiction and the federal sentencing court intended its sentence to be served concurrently with the non-federal sentence." BOP Program Statement 5160.05(9)(a) (January 16, 2003). In other words, if an inmate was in state custody when sentenced, and the federal court determined that it would be proper for his federal sentence to run concurrently to that state sentence, the BOP can determine how best to implement the resulting sentencing scheme. Inmates can petition for *nunc pro tunc* designation after they enter federal custody, and the BOP must consider these petitions in accordance with the factors provided in § 3621. The

BOP, in exercising its discretion under § 3621(b), must weigh all the listed factors and determine *nunc pro tunc* whether an inmate's federal sentence should run concurrently with his state sentence. This ability applies only where a sentencing judge has not explicitly ordered that an inmate's federal sentence should run consecutively to a previously-imposed sentence, however. See id. 5160.05(9)(f) ("The Bureau will not allow a concurrent designation if the sentencing court has already made a determination regarding the order of service of sentence (e.g., the federal sentencing court ordered the sentence to run consecutively to any other sentence . . . during the time in which the inmate requests concurrent designation.).") The BOP must take into consideration the views of the sentencing judge, but these views are not dispositive, unless the sentencing judge has already ruled that an inmate's federal sentence should run consecutively to his state sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 482-83 (3d Cir. 1990) (holding that the BOP erred in finding that the decision of the sentencing judge rendered it unable to exercise its own discretion in considering a petition for *nunc pro tunc* designation); Pub. Serv. Co. of Ind. v. I.C.C., 749 F.2d 753, 763 (D.C. Cir. 1984) (holding that, when an agency implements multi-factor tests, the agency cannot select any one particular factor as controlling).

If a federal sentencing judge, exercising his or her lawful discretion under § 3584(a), explicitly mandates that an inmate's federal sentence should run consecutively to any other imposed sentences – state or federal – the BOP does not have the authority to designate that federal sentence as *nunc pro tunc* concurrent to a state sentence. This limit on the BOP's power is based on the fact that, as described above, only the judiciary has the actual power to impose a sentence. If a federal sentencing court explicitly exercises its discretion to determine that sentences should run consecutive, the BOP has no power, ability, or discretion to overrule that decision. See Setser, 132 S. Ct. at 1469-70 (2012). The BOP's discretion under § 3621(b) arises

only when a federal judge does not definitively exercise his or her discretion to mandate consecutive sentences. Only when a federal judge does not mandate consecutive sentences does the BOP have the ability to determine how best to implement the federal sentence, including determining whether the sentences should run consecutively or concurrently.

### B. Petitioner is Not Entitled to *Nunc Pro Tunc* Designation

Petitioner challenges the BOP's refusal to consider his petition for *nunc pro tunc* designation in accordance with the factors provided in § 2361(b). He alleges that the agency abused its discretion by relying solely on the views of the sentencing judge, and that the agency should be compelled to at least consider his petition.

In the specific circumstances of petitioner's case, it is clear that the BOP did not abuse its discretion in refusing to consider his request for *nunc pro tunc* designation. Petitioner is correct that numerous courts have found that BOP, when considering a petition for *nunc pro tunc* designation, "abdicated its statutory responsibility to bring its independent judgment to bear on the matter" by relying solely on the sentencing judge's objection to such a designation. Trowell v. Beeler, 135 F. App'x 590, 594-95 (4th Cir. 2005); see also Fortney v. Yancey, No. 2:05cv2168-RBH, 2007 WL 1202766, at *5-*6 (D.S.C. Apr. 20, 2007) (granting a writ of habeas corpus when BOP, after first determining that inmate's request had merit, relied only on the objections of the sentencing judge to deny the petition). Indeed, in Barden v. Keohane, 921 F.2d 476, the seminal case governing the BOP's ability to make *nunc pro tunc* designations, the Third Circuit held that the BOP's decision not to grant a petition solely because the federal sentencing judge did not explicitly order that an inmate's sentences run concurrently was an abuse of discretion. Id. at 482-83. Accordingly, petitioner's argument, that the BOP must exercise its independent discretion and weigh all the factors in § 3621(b), is correct, on the facts of Barden

9

and numerous similar situations. Importantly, petitioner's case is not similar to the facts of Barden.

Unlike Barden, the specific facts of petitioner's case are that, at the time of his federal sentencing, he was serving an as-yet undischarged state sentence, and the federal sentencing court explicitly ruled that his federal sentence was to run consecutively to that state sentence. See, e.g., Resp.'s Mem., Ex. B, at 2-3 ("The sentence imposed in [the federal case] shall run consecutive to any other sentence heretofore imposed."). In Barden and every other case cited by petitioner, federal sentences were imposed *before* state sentences, the federal sentencing judge did not specify at sentencing whether the petitioner's federal sentence was to run concurrently or consecutively to his state sentence, or both. See, e.g., Barden, 921 F.2d at 478, 482 (petitioner was sentenced to federal charges, with no recommendation as to concurrency of sentences, returned to state custody, and then sentenced on state charges); Fortney, 2007 WL 1202766, at *3 (petitioner was sentenced in the Middle District of Florida two months prior to his state trial); Parks v. Stansberry, No. 1:10cv1217 (LMB/TCB), 2011 WL 3895298, at *1 (E.D. Va. Sept. 1, 2011) (Brinkema, J.) (initial federal sentencing memorandum did not specify whether the federal sentence would run concurrently or consecutively to any future state sentence); Williams v. Stephens, No. 5:09-HC-2131-D, 2011 WL 2269408, at *1 (E.D.N.C. June 7, 2011) (federal judgment silent on whether sentence was concurrent or consecutive to already-imposed state sentence). Accordingly, sentences in those cases were imposed in situations when there was no express statement from the sentencing judge on whether a federal sentence should run consecutively to a previously-imposed state sentence. In these situations, BOP has the discretion to consider petitions for *nunc pro tunc* designations. In the instant case, however, the sentencing

judge explicitly ordered petitioner's sentences to run consecutively, and it is therefore clear that BOP did not abuse its discretion in not considering the petition.

When petitioner was sentenced in federal court, he was already subject to a 25-to-life sentence imposed by D.C. authorities. This Court, presented with that information, explicitly chose to impose petitioner's federal sentence consecutively to that undischarged state sentence. This sentencing decision, made with full knowledge of petitioner's crimes and imposed sentences, is not one that can be overturned by the BOP. See Setser, 132 S. Ct. at 1468 ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences . . . that have been imposed in other proceedings, including state proceedings."); Sweat v. Grondolsky, 898 F. Supp. 2d 347, 352 (D. Mass. 2012) ("Where, as here, the federal court has made an express determination that the federal sentence should run consecutively to the state sentence, the BOP is bound by that directive."); Brown v. Zych, No. 7:11-cv-605, 2012 WL 5386339, at *5 (W.D. Va. Nov. 1, 2012) ("[T]he Setser court explained that the [BOP's] authority to [designate a state facility as a place to serve a federal sentence] does not constitute authority to make a decision about concurrency or consecutive sentences in the first instance, while lies with the district court."). Prior to Setser, there was some debate about a district court's ability to impose a federal sentence to run concurrent with a yet-to-be-imposed state sentence, see, e.g., United States v. Hopkins, 568 F. App'x 143, 144 (3d Cir. 2014), but there has never been any uncertainty about the power of a federal court to impose consecutive sentences in a case such as this, when the judge has all the information necessary to make such a decision at the time of federal sentencing. Cf. Setser, 132 S. Ct. at 1472-73 (concluding that the federal court's sentence was not objectively unreasonable at the time rendered due to changed circumstances arising *after* its imposition). The BOP's

discretion to designate a place of confinement extends only to implementation of a sentence, not to the actual decision of *how* to classify an inmate's initial sentence.

Petitioner argues that "late-onset facts," including the change in the sentencing guidelines from mandatory to advisory, "the environment of notorious dangerousness at Lorton," the "dubious nature" of petitioner's underlying D.C. conviction, petitioner's "exemplary record of service for over two decades without a single infraction since the federal conviction incurred," and petitioner's existing post-release plan, mandate that BOP consider his petition for *nunc pro tunc* designation. See Pet.'s Opp., at 11. This argument is irrelevant, however, to the facts of petitioner's case. In Setser, the U.S. Supreme Court noted that "late-onset facts that materially alter a prisoner's position [may] make it difficult, or even impossible, to implement his sentence." In those situations, the BOP has discretion to "determine how long the District Court's sentence authorizes it to continue [petitioner's] confinement." Setser, 132 S. Ct. at 1473. Here, this Court's sentence authorized the BOP to keep petitioner confined in federal custody for a period of time consecutive to his state sentence. To the extent the BOP wishes to consider the above factors in implementing the remainder of his federal sentence – by releasing petitioner to home confinement earlier than planned, by petitioning this Court for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), or through some other method – the BOP is, of course, free to do so. These "late-onset factors" have no impact, however, on petitioner's initially-imposed federal sentence.

Because the BOP does not have the authority to overrule this Court's determination that petitioner serve consecutive sentences, it is clear from the record that the BOP did not abuse its discretion in failing to consider petitioner's request for *nunc pro tunc* designation.

### C. The Court Does Not Have Jurisdiction over Petitioner's Additional Requests

Petitioner appears to also request that this Court construe his petition as a request for the Director of the BOP to move for a sentencing modification, pursuant to 18 U.S.C. § 3582(c)(1)(A). See Pet.'s Opp., at 5. To the extent that petitioner requests this relief, his request cannot be entertained until the Director of the BOP makes such a motion. Section 3582(c)(1)(A) provides:

> The court may not modify a term of imprisonment once it has been imposed except that in any case, the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). As the Director of the BOP has not made such a motion on petitioner's behalf, there is no jurisdiction to consider petitioner's request. Petitioner states that he has already petitioned the BOP Director to make a motion on his behalf, but was told that his requested relief properly was sought through the Administrative Remedy Process. See Pet.'s Opp., at 6. Accordingly, petitioner needs to pursue his request for such a motion through the internal BOP process.

In the alternative, petitioner asks this Court to "review the facts and equities of his case, modify its original sentence to enter a (retroactive) concurrence designation and order immediate release." Pet.'s Opp., at 8. This request also cannot be considered. "The law closely guards the finality of criminal sentences against judicial 'change of heart.'" United States v. Goodwyn, 596 F.2d 233, 235 (4th Cir. 2010) (citing United States v. Layman, 116 F.3d 105, 109 (4th Cir. 1997)). The scope of a court's ability to modify a sentence is necessarily limited, in order to promote the finality of criminal judgments and sentences. See United States v. Fields, 552 F.3d

13

401, 405 (4th Cir. 2009). Indeed, as 18 U.S.C. § 3582(c)(1) makes clear, "the court may not modify a term of imprisonment once it has been imposed," unless the BOP moves for a modification based on the existence of "extraordinary and compelling reasons." See United States v. Cunningham, 554 F.3d 703, 708 (7th Cir. 2009) (finding that there is no "inherent authority" for a district court to modify a previously-imposed sentence). Federal Rule of Criminal Procedure 35, which governs a court's ability to reduce or correct a sentence, allows a court to adjust a sentence in limited ways within a limited period of time after trial. See Fed. R. Crim. P. 35(a) (allowing the court to correct clerical errors in sentencing within 14 days after its imposition); 35(b) (allowing a sentence to be reduced for substantial assistance within one year after the imposition of the sentence). In petitioner's case, these periods have long since expired. Therefore, as the BOP has made no motion pursuant to 18 U.S.C. § 3582(c)(1)(A), petitioner's request to modify his sentence must be denied.

## IV. Conclusion

For the foregoing reasons, the BOP's decision not to consider petitioner's request for *nunc pro tunc* designation was not an abuse of discretion, and respondent's Motion for Summary Judgment must be granted.

Entered this 19th day of February 2015.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge